IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LARRY E. OPITZ,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C14-2063<br><br>RULING ON JUDICIAL REVIEW |

TABLE OF CONTENTS

I.    INTRODUCTION ................................ 2

II.   PRINCIPLES OF REVIEW ......................... 2

III.  FACTS ........................................ 4
    A.   Opitz's Education and Employment Background ....... 4
    B.   Vocational Expert's Testimony from the March 7, 2013
       Administrative Hearing ........................ 4
    C.   Opitz's Medical History ........................ 6

IV.  CONCLUSIONS OF LAW .......................... 11
    A.   ALJ's Disability Determination .................. 11
    B.   Objections Raised By Claimant ................... 14
       1.   Dr. Brown's Opinions ..................... 14
       2.   RFC Assessment and Hypothetical Question ..... 17

V.   CONCLUSION ................................. 20

VI.  ORDER ..................................... 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Larry E. Opitz on September 29, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits.[1] Opitz asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Opitz requests the Court to remand this matter for further proceedings. On October 31, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

---

[1] On August 25, 2011, Opitz applied for both disability insurance benefits under Title II, and SSI benefits under Title XVI. However, his application for SSI benefits was denied because his non-excludable resources exceeded Title XVI limitations, making Opitz ineligible for SSI benefits. *See* Administrative Record at 224. Accordingly, the ALJ's decision only addresses Opitz's application for Title II disability insurance benefits. In his brief, Opitz argues that the ALJ erred by not considering his application for SSI benefits. Opitz is incorrect. As the Commissioner correctly points out in her brief, "[b]ecause [Opitz] did not meet the financial eligibility requirements for SSI, the ALJ could only consider his [disability insurance benefits] claim[.]" Commissioner's Brief (docket number 13) at 25. Therefore, the Court finds no merit in Opitz's argument, and finds no error in the ALJ not addressing Opitz's application for SSI benefits.

2

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a

3

different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. *Opitz's Education and Employment Background*

Opitz was born in 1959. He graduated from high school. While in school, he did not participate in any special education classes. In the past, Opitz worked as a truck driver.

#### B. *Vocational Expert's Testimony from the March 7, 2013 Administrative Hearing*

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual with:

> no exertional postural manipulative limitations who is limited to simple repetitive tasks and occasional complex tasks, no interaction with the public, no employment requiring exchanges of -- of cash. No employments requiring reading of detailed instructions[.] . . .

(Administrative Record at 83.) The vocational expert responded that under such limitations, Opitz could perform his past work as a truck driver. The ALJ provided the vocational expert with a second hypothetical:

> The second hypothetical individual [has] no exertional postural manipulative limitations. Does have the . . . ability to do constant, simple repetitive tasks and occasional complex, however, cannot maintain concentration on a consistent basis for more than one hour at a time. . . . [N]o employments with interaction with the public, only occasional superficial interactions with co-employees, no employments requiring exchange of cash, no employments requiring retail or reading of detailed instructions.

(Administrative Record at 83). The vocational expert testified that under such limitations, Opitz would be precluded from competitive employment. Next, the ALJ inquired:

> Consider a hypothetical individual with the limitations . . . described in hypothetical one w[ith] the additional limitation that the individual could not read above the second-grade level, are there any employments with the . . . local or national economies where an individual aged 48 to 52 with a high school education, past work experience of [Opitz] and limitations I just described?

(Administrative Record at 85.) The vocational expert testified that under such limitations, Opitz could perform the following jobs: (1) cleaner, (2) laundry worker, and (3) kitchen helper. Finally, the ALJ provided the vocational expert with the following hypothetical:

> we have an individual who can lift, carry occasionally up to 20 pounds, frequently can stand or walk six hours of an eight-hour work day, sit about six hours of an eight-hour work day[.] Limited to -- cognitively capable of constant simple repetitive tasks, no interaction with the public, occasional superficial interaction with the coworkers. No employments requiring exchanges [of cash] . . . [and no] employments requiring reading of detailed instructions.

5

(Administrative Record at 86.) According to the vocational expert, under such limitations, Opitz could perform the following light, unskilled work: (1) folder, (2) laundry sorter, and (3) housekeeper.

### C. Opitz's Medical History

On December 20, 2008, Opitz met with Dr. Gregory Hotsenpiller, M.D., Ph.D., complaining of depression and ADHD. Opitz admitted to Dr. Hotsenpiller that he used methamphetamine in the past for numerous years as a truck driver because it "helped him feel 'normal' in his work performance and daily functioning."[2] According to Opitz, he has been substance free for five years. Opitz claimed chronic issues with concentration and being inattentive/disorganized. He also indicated that he has developed problems with mood, energy, and motivation. Educationally, Dr. Hotsenpiller noted that Opitz "completed high school although he states his mother did most of the work for him and he tested as seventh grade level of reading/writing."[3] Upon examination, Dr. Hotsenpiller diagnosed Opitz with major depressive disorder, possible history of ADHD, and history of methamphetamine dependence in sustained full remission. Dr. Hotsenpiller was reluctant to prescribe medication for Opitz, until he got his hypertension under control. Dr. Hotsenpiller did not believe that therapy was necessary.

On December 29, 2009, Opitz was referred by Disability Determination Services ("DDS") to Dr. Seth A. Brown, Ph.D., for a psychological evaluation. Dr. Brown noted that Opitz had a history of depression, amphetamine use, and attention problems. Opitz reported that while in school, he had "great difficulty with reading, generally earning C and D grades."[4] However, he was never enrolled in special education classes. Opitz

---

[2] Administrative Record at 449.

[3] Administrative Record at 450.

[4] *Id.* at 466.

6

claimed to have a seventh or eighth grade reading level. Dr. Brown provided Opitz with a "sample reading from a local newspaper with which Mr. Opitz had great difficulty reading longer words."[5] Dr. Brown concluded that Opitz "appears to have significant difficulty with reading."[6] Opitz also stated that he took Ritalin to address ADHD symptoms, however, testing showed only 5 out of 9 inattention symptoms for ADHD, falling short of the minimal criteria for the inattention symptom cluster. Dr. Brown further noted that Opitz "denied a number of hyperactivity/impulsivity symptoms. In general, he does not appear to be currently meeting diagnostic criteria for ADHD."[7] With regard to activities of daily living, Dr. Brown found that:

> During a typical day, [Opitz] reported being able to prepare his own meals but has some difficulty with his own personal hygiene. He will frequently skip showers, not having motivation to the point where he will get skin rashes. He also varies on his participation in cleaning his house. He is able to do his own laundry and possesses a valid driver's license and is able to transport himself around the community. He is able to track his own money but has great difficulty paying his bills due to his difficulty reading.

(Administrative Record at 467-68.) Upon examination, Dr. Brown diagnosed Opitz with a possible reading disorder. Dr. Brown concluded that:

> In regard to work ability, he is currently working part-time as a farm hand, and reports satisfaction with his current work arrangement. In the past he has worked jobs for a long number of years working a long number of hours and it appears that he is capable of some type of part-time or full-time employment. However, his reading abilities may in fact curtail him from some types of employment.

---

[5] *Id.* at 467.

[6] *Id.*

[7] *Id.*

7

(Administrative Record at 469.)

On January 19, 2010, Dr. Philip Laughlin, Ph.D., reviewed Opitz's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Opitz. On the Psychiatric Review Technique assessment, Dr. Laughlin diagnosed Opitz with a history of ADHD with possible reading disorder, major depressive disorder, and methamphetamine and marijuana abuse/dependence. Dr. Laughlin determined that Opitz had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Laughlin found that Opitz was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Dr. Laughlin concluded that Opitz "reportedly works 2-3 days weekly assisting a farmer, drives a pickup truck, and appears capable of engagint [(sic)] in sustained simple activities for extended periods of time."[8]

On October 4, 2011, at the request of DDS, Opitz met with Dr. Deborah J. Jarrett, D.O., for a consultative examination. In reviewing Opitz's medical history, Dr. Jarrett noted that Opitz had:

> a poor history with very limited reading and writing skills; his sister completed his *Personal Pain/Fatigue Questionnaire*. He complains of multiple issues including syncopal episodes,

---

[8] Administrative Record at 486.

8

> difficulty breathing, chronic abdominal pain, depression, attention deficit disorder, and fatigue. Musculoskeletal complaints are limited; he reports easily lifting 30 pounds or more and having no difficulty walking or standing for extended periods of time. I was not able to ascertain which of the above complaints he believes warrants disability benefits.

(Administrative Record 557.) Focusing on Opitz's depression and attention deficit disorder, Dr. Jarrett noted that:

> When questioned about his mood, daily activities, and self-esteem, he reported being depressed at times, overeating regularly, having difficulty concentrating and completing tasks, having insomnia, and feeling at times that his life is worthless. "I get so depressed that I will not go out of my house for weeks at a time." He will have his groceries delivered and his mother will bring in meals. Questioning is positive for anhedonia. . . . He has a diagnosis of attention deficit disorder and is currently treated with methylphenidate. He does not recall the date of this diagnosis. He recalls having difficulties focusing and learning while in school; he has continued to have problems with focusing and completing tasks.

(Administrative Record at 557.) Opitz also reported being tired "all of the time" and not feeling like doing anything. In discussing his work history, Dr. Jarrett noted that "[h]e was able to compensate for his illiteracy with the help of others, learning the patterns for each form, and using primarily verbal communications."[9] Upon examination, Dr. Jarrett diagnosed Opitz with depression, attention deficit disorder, and illiteracy. With regard to his illiteracy, Jarrett opined that:

> [I] suspect he will have difficulties obtaining and maintaining employment in today's environment without improving his reading and writing skills. He relates no problems with mathematics, in fact, he was successful managing his personal

---

[9] Administrative Record at 558.

and business finances in the past. I recommend evaluation of his academic/learning behaviors.

(Administrative Record at 559.)

On October 12, 2011, Opitz was referred by DDS to Dr. Brown for a second psychological evaluation. In reviewing Opitz's medical records, Dr. Brown opined that "[t]hese records document that Mr. Opitz has a number of physiological problems, and receives Ritalin for Attention Deficit/Hyperactivity Disorder (ADHD) and antidepressant medication for depression."[10] In discussing Opitz's psychological problems, Dr. Brown noted that:

> Although he reported feeling depressed for upwards of three to four days at most, he could not recall any specific periods where he felt depressed for longer periods of time. He explained that he generally dislikes being around other people and as a result spends most of his time at home. He reported that he feels that people think less of him and he feels quite uncomfortable around other people. He denied any paranoid ideation in regard to other people. He does feel quite anxious when leaving the house and experiences some physical symptoms from time-to-time but these do not rise to the level of a formalized anxiety disorder. Mr. Opitz also denied a number of diagnostic criteria for Post Traumatic Stress Disorder (PTSD) or Attention-Deficit/Hyperactivity Disorder (ADHD). Although he did acknowledge a few symptoms in regard to the latter, this fell far short of a diagnosis of ADHD. . . . During the span of his lifetime, Mr. Opitz denied that he has ever engaged in any kind of mental health treatment services.

(Administrative Record at 567.) Opitz also reported a history of substance abuse problems. Dr. Brown noted that his "last use of marijuana was two months ago and his last use of methamphetamine was over six to seven years ago. He has never participated

---

[10] *Id.* at 566.

in any kind of substance use treatment program."[11] Dr. Brown also administered a reading test to Opitz. Based on his performance, the test demonstrated that Opitz reads at a second grade level, placing him in the impaired range for his overall reading ability. Dr. Brown opined that "[t]his level of reading ability is likely to cause significant impairment in his ability to secure employment. He will unlikely be able to read the most straight forward material presented to him in the workplace setting."[12] Upon examination, Dr. Brown diagnosed Opitz with a reading disorder, cannabis abuse, and history of methamphetamine abuse. Dr. Brown assessed Opitz with a GAF score of 60. Dr. Brown concluded that:

> In regard to activities of daily living, Mr. Opitz is generally autonomous in his daily functioning with the exception of needing prompting to accomplish personal hygiene and cleaning his home. His last employment was over three years ago; he only had minor difficulties at this employment. He stated that he had to retire from this job as he was not getting paid by contractors but was also passing out on the job and could not recall what exact medical condition was contributing to this. It is likely that his rather low reading level is likely to present a very strong challenge to his ability to engage in some type of meaningful employment, given the requisite level of reading ability expected from most employers.

(Administrative Record at 569.)

### IV. CONCLUSIONS OF LAW

#### A. ALJ's Disability Determination

The ALJ determined that Opitz is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42

---

[11] Administrative Record at 567.

[12] *Id.* at 569.

(1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant

work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Opitz had not engaged in substantial gainful activity since June 1, 2008. At the second step, the ALJ concluded from the medical evidence that Opitz had the following severe impairments: organic brain disorder, affective and anxiety disorders, polysubstance abuse, obesity, abdominal pain, ventral hernia, COPD, and hypertension. At the third step, the ALJ found that Opitz did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Opitz's RFC as follows:

> [Opitz] has the residual functional capacity to perform less than the full range of light work[.] . . . Specifically, [Opitz] could lift and/or carry ten pounds frequently, twenty pounds occasionally; he could sit, stand, and/or walk for six hours out of an eight-hour workday; he is cognitively capable of simple routine tasks; he is to have no contact with the public; he could

13

have superficial contact with co-workers; he is to have no
employment requiring exchanges of cash; and no employment
requiring reading of detailed instructions.

(Administrative Record at 40.) Also at the fourth step, the ALJ determined that Opitz could not perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Opitz could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Opitz was not disabled.

### B. Objections Raised By Claimant

Opitz argues that the ALJ erred in two respects. First, Opitz argues that the ALJ erred by failing to properly consider the opinions of Dr. Brown. Second, Opitz argues that the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed because they do not properly set forth his credible functional limitations.

#### 1. Dr. Brown's Opinions

Opitz argues that the ALJ failed to properly consider the opinions of Dr. Brown, a two-time consultative examining psychologist. Specifically, Opitz argues that the ALJ failed to explain his reasoning for not adopting Dr. Brown's objective finding that Opitz can only read at a second grade level in his RFC assessment for Opitz. Thus, Opitz concludes that remand is necessary to allow the ALJ to further consider and develop the record with regard to the opinions of Dr. Brown.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve

conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ addressed Dr. Brown's findings as follows:

> [Opitz] underwent a psychiatric consultative examination with Dr. Brown on December 29, 2009. [Opitz] reported he was working as a farm hand at the time. He scored 29 out of 30 on the mini mental status evaluation and no problematic areas were noted. [Opitz] fell short of an anxiety disorder, and he only reported five of the nine inattention symptoms for ADHD. He was diagnosed with amphetamine related disorder, not otherwise specified, and a history of alcohol abuse.
>
> [Opitz] underwent another psychiatric consultative examination with Dr. Brown on October 12, 2011. [Opitz] again fell short of a diagnosis of ADHD. He denied ever engaging in any kind of mental health treatment. He scored 28 of 30 on the mini mental status evaluation. Although he reported some

> discomfort being around other people, this did not rise to a level of a formalized anxiety disorder. He denied a number of other symptoms, which would substantiate some type of mental health diagnosis. He did report a number of substance use problems, which include methamphetamine and marijuana. In his previous evaluation in December 2009 with this evaluator, he also reported alcohol abuse problems on that occasion but did not report them currently. [Opitz] reported having great difficulty with reading and writing, which was substantiated by his performance on the WRAT-3 test. Surprisingly, his overall mental status was relatively intact as he scored in the average range. He was diagnosed with a reading disorder, cannabis abuse, and a history of methamphetamine abuse.

(Administrative Record at 43.) In weighing Dr. Brown's opinions, the ALJ explained:

> I have considered and give some weight to Dr. Brown. This was based on an in-person exam, the assessment is complete, specific facts are cited upon which the conclusion is based, and is relatively consistent with the record as a whole. However, there are no specific descriptions of limitations, and he is not expert in the "open labor market" he refers to. Therefore, it is given no more than some weight.

(Administrative Record at 44.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Brown. The Court also finds that the ALJ provided "good reasons" for granting only "some" weight to Dr. Brown's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Specifically, with regard to Dr. Brown's finding that Opitz reads at a second grade level, the Court believes that the ALJ properly considered this finding in making his RFC determination for Opitz. The ALJ's RFC assessment addresses Opitz's reading ability and limits him to having "no employment requiring exchanges of cash; and no employment

requiring reading of detailed instructions."[13] Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *RFC Assessment and Hypothetical Question*

Opitz argues that both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed. Specifically, Opitz argues that the ALJ's RFC assessment and hypothetical questions to the vocational expert are incomplete because they do not properly account for all of his impairments and functional limitations. Opitz maintains that this matter should be remanded for a new RFC determination based on a fully and fairly developed record, and to allow the ALJ to provide the vocational expert with a proper and complete hypothetical question.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some

---

[13] Administrative Record at 40.

support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In his decision, the ALJ determined that:

> In sum, [Opitz's] activity level, objective clinical and diagnostic findings, and treatment records support a finding [Opitz] is not disabled. I think [Opitz] has the capacity to do

a less than full range of light work, as reflected in the residual functional capacity adopted herein. This residual functional capacity takes into consideration [Opitz's] subjective complaints while finding the maximum limitations based on the objective evidence.

(Administrative Record at 44-45.) Furthermore, in determining Opitz's RFC, the ALJ thoroughly addressed and considered Opitz's medical history and treatment for his complaints.[14] The ALJ also properly considered and thoroughly discussed Opitz's subjective allegations of disability in making his overall disability determination, including determining Opitz's RFC.[15]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Opitz's medical records, observations of treating physicians, and Opitz's own description of his limitations in making the ALJ's RFC assessment for Opitz.[16] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Opitz's assertion that the ALJ's RFC assessment is flawed is without merit.

Similarly, having reviewed the entire record, the Court, again, finds that the ALJ thoroughly considered and discussed both the medical evidence and Opitz's testimony in

---

[14] *See* Administrative Record at 42-45 (providing a thorough discussion of Opitz's overall medical history and treatment).

[15] *Id.* at 41-42 (providing a thorough discussion of Opitz's subjective allegations of disability).

[16] *Id.* at 41-45 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

determining Opitz's impairments and functional limitations.[17] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. See Goose, 238 F.3d at 985; see also Forte v. Barnhart, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinions of Dr. Brown. The Court also finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Lastly, the ALJ's hypothetical questions to the vocational expert was sufficient because they properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 14th day of July, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[17] See Administrative Record at 41-45.